O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HARRIS,<br><br>              Plaintiff,<br><br>    v.<br><br>851 WEST FRONT ENTERPRISE LLC; and DOES 1 to 10,<br><br>              Defendants. | Case No.: 2:25-cv-01296-MEMF<br><br>**ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS** |

    Before the Court is the Response to the Court's Order to Show Cause Regarding Supplemental Jurisdiction filed by Plaintiff. ECF No. 12. For the reasons stated herein, the Court DECLINES to exercise supplemental jurisdiction over Plaintiff Michael Harris's state law claims and DISMISSES the claims.

## I. Background

### A. Factual Background[1]

Plaintiff Michael Harris ("Harris") is a California resident who suffers from hemiplegia and hemiparesis and requires a wheelchair at all times when traveling in public. Compl. ¶ 1. Defendants 851 West Front Enterprise LLC and Does 1 through 10 ("Defendants") are the owner of an auto body shop (the "Business") located at or about 851 West Front Street, Covina, California. *Id.* ¶ 2.

In or about October 2024, Harris went to the Business. *Id.* ¶ 10. He personally encountered barriers in doing so. *Id.* ¶ 12. The Business does not have a parking space designated for persons with disabilities, nor does it have signage indicating such a space with the International Symbol of Accessibility, signage warning others not to park in the designated space, proper paint on the ground for such a space, or proper van accessibility for such a space. *Id.* ¶ 13. These issues deny Harris the full and equal access to the Business and deter him from visiting the business. *Id.* ¶ 14.

### B. Procedural History

On February 14, 2025, Harris filed a complaint against Defendants, asserting: (1) a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2) a claim for damages pursuant to California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51–53, *et seq.*; (3) a claim for damages pursuant to the California Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.*; (4) a claim for damages and injunctive relief based on California Health and Safety Code § 19955, *et seq.*; (5) a claim for damages for negligence. *See generally* Compl. On March 17, 2025, the Court ordered Harris to show cause as to why the Court should exercise supplemental jurisdiction over his state law claims. ECF No. 11 ("OSC"). Harris filed a response on April 1, 2025. Response, ECF No. 12 ("Resp.").

## II. Applicable Law

### A. Supplemental Jurisdiction

42 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and *at every*

---

[1] The factual allegations included in this section are taken from the Complaint. ECF No. 1 ("Compl."). The Court makes no finding on the truth of these allegations and includes them only as background.

2

*stage of the litigation*, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (emphasis added) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). A district court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, district courts have the discretion to decline to exercise supplemental jurisdiction if:

> (1) The claim raises a novel or complex issue of State law;
> (2) The claim substantially predominates over the claim over which the district court has original jurisdiction;
> (3) The district court has dismissed all claims over which it has original jurisdiction; or
> (4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). A district court declining supplemental jurisdiction pursuant to the section 1367(c)(4)'s "exceptional circumstances" provision must satisfy a two-part inquiry: (1) the "district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)"; and (2) "in determining whether there are compelling reasons for declining jurisdiction . . . the court should consider what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Vo v. Choi*, 49 F.4th 1167, 1171 (9th Cir. 2022) (internal quotation marks omitted) (quoting *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (describing the inquiry)).

### B. The ADA and Unruh Act

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Only injunctive relief is available under the ADA. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

The Unruh Act entitles all people within California, regardless of their disability "to the full and equal accommodations, advantages, facilities, privileges, or services in all business

1  establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Under the Unruh Act, a violation
2  of the ADA constitutes a violation of § 51 of the Unruh Act. *See id.* § 51(f). And although the Unruh
3  Act also permits injunctive relief, unlike the ADA, it also allows for recovery of monetary damages.
4  It entitles plaintiffs to actual damages for each offense "up to a maximum of three times the amount
5  of actual damage but in no case less than four thousand dollars." *Id.* § 52(a). "The litigant need not
6  prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*
7  *v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

8  Under the Unruh Act, all persons in California, "no matter what their . . . disability . . . are
9  entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all
10 business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act and the
11 ADA go hand-in-hand—a violation of the ADA is automatically a violation of the Unruh Act. *Vo*, 49
12 F.4th at 1169 (citing *Arroyo*, 19 F.4th at 1204). However, unlike the ADA, the Unruh Act allows for
13 recovery of monetary damages for every offense "up to a maximum of three times the amount of
14 actual damage but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52(a).

15 Further, California law sets forth a heightened pleading standard for lawsuits brought under
16 the Unruh Act. *See* Cal. Civ. Proc. Code §§ 425.55(a)(2) & (3). The stricter pleading standard
17 requires certain plaintiffs bringing construction-access claims like the one in the instant case to file a
18 verified complaint alleging specific facts concerning the plaintiff's claim, including the specific
19 barriers encountered or how the plaintiff was deterred and each date on which the plaintiff
20 encountered each barrier or was deterred. *See id.* § 425.50(a). A "high-frequency litigant fee" of
21 $1,000 is also imposed on certain plaintiffs and law firms bringing these claims. *See* Cal. Gov't
22 Code § 70616.5. A "high-frequency litigant" is "a plaintiff who has filed 10 or more complaints
23 alleging a construction-related accessibility violation within the 12-month period immediately
24 preceding the filing of the current complaint alleging a construction-related accessibility violation"
25 *and* "an attorney who has represented as attorney of record 10 or more high-frequency litigant
26 plaintiffs in actions that were resolved within the 12-month period immediately preceding the filing
27 of the current complaint alleging a construction-related accessibility violation." Cal. Civ. Proc. Code
28 §§ 425.55(b)(1) & (2). High frequency litigants are also required to state: (1) whether the complaint

is filed by, or on behalf of, a high-frequency litigant; (2) in the case of a high-frequency litigant who is a plaintiff, the number of complaints alleging construction-related accessibility claim filed by the high-frequency litigant during the 12 months prior to filing the instant complaint; (3) the reason the individual was in the geographic area of the defendant's business; and (4) the reason why the individual desired to access the defendant's business." *See id.* § 425.50(a)(4)(A).

### III. Discussion

In the Order to Show Cause, the Court ordered Harris to show cause in writing why the Court should exercise supplemental jurisdiction over his Unruh Act claim, California Disabled Persons Act claim, California Health and Safety Code claim, and negligence claim. *See* 28 U.S.C. § 1367(c). Further, the Court ordered Harris to identify the amount of statutory damages he seeks to recover and provide all facts necessary for the Court to determine if Harris and Harris's counsel satisfy the definition of a "high-frequency litigants" as provided by California Code of Civil Procedure §§ 425.55(b)(1) & (2). The Court finds Harris's state law claims unsuitable for supplemental jurisdiction within the meaning of section 1367(c)(4).

### A. The Court declines to exercise supplemental jurisdiction over the state law claims.

In the OSC, the Court ordered Harris to "identify the amount of statutory damages" sought under the Unruh Act and include declarations "providing all facts necessary" for the Court to determine whether Harris and Harris's counsel satisfy the definition of a "high-frequency litigant" as provided by California Code of Civil Procedure §§ 425.55(b)(1) & (2). OSC at 2.

#### i. Harris qualifies as a high frequency litigant.

In the response to the Court's OSC, Harris admits that he has filed more than ten complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the instant complaint. ECF No. 12-2. Correspondingly, Harris's counsel conceded that their law firm "likely" qualifies as a high-frequency litigant but failed to provide any facts from which the Court could determine whether Harris's counsel satisfies the definition of a high-frequency litigant under Cal. Civ. Proc. Code § 425.55(b)(2); *see* ECF No. 12-1.

Therefore, in state court, Harris would not only be obligated to pay the $1,000 high-frequency litigant fee but would also be required to meet the heightened pleading standard and allege specific facts relating to his claim. Although Harris alleges that he "is deterred from visiting the Business," he has not set forth the allegations required by the heightened pleading standard—namely, he fails to disclose in his complaint that the complaint was filed by or on behalf of a high-frequency litigant, state the number of construction-related accessibility complaints he filed within the 12 months prior to filing the instant complaint, or explain why he was in the geographic area of the Business. *See* Compl.

The California legislature has determined that requiring Harris and other high frequency litigants to meet this heightened pleading standard would serve California's interest in preventing continued abuse of the Unruh Act by high-frequency litigants. *Arroyo*, 19 F.4th at 1206–07. It is therefore appropriate in view of the *Gibbs* values of judicial economy, convenience, fairness to litigants, and comity to decline supplemental jurisdiction so that Harris may comply with the requirements and California's interest in curtailing abuse can be vindicated. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

ii. Harris's state law claims predominate over the federal ADA claim.

Harris asserts five claims: one federal law claim and four state law claims. *See generally* Compl. Of these four claims, Harris seeks damages and injunctive relief in connection with his state law claims and, as prescribed by statute, only seeks an injunction in connection with his ADA claim. *See id.*

A district court may dismiss state law claims without prejudice if a state law claim "substantially predominates" over a federal claim "in terms of proof, of the scope of the issues raised or of the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726–27. Indeed, the Unruh Act entitles plaintiffs to a minimum award of $4,000 for each violation of the Act. Cal. Civ. Code § 52(a).

The Court finds that Harris's state law claims predominate over the federal law ADA claim. Harris seeks "all appropriate damages, including but not limited to statutory damages, general damages and treble damages in amounts, according to proof," and as such, any potential monetary

damages awarded predominate over the injunctive relief sought on the ADA claim. Compl. at Prayer.

      iii. <u>Given the comity concerns expressed by the Ninth Circuit, exceptional circumstances exist to justify declining exercise of supplemental jurisdiction.</u>

In the Ninth Circuit, to qualify as "exceptional circumstances" under section 1367(c)(4), the circumstances at hand "should be 'quite unusual' and should not rest 'solely' on routinely occurring conditions such as 'docket congestion.'" *Arroyo*, 19 F.4th at 1211 (quoting *Ex. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 24 F.3d 1545, 1558, 1560 n.15 (9th Cir. 1994)). The Ninth Circuit has held that in the context of joint ADA-Unruh Act claims, the specific legislative apparatus surrounding the Unruh Act and the ADA meets the "exceptional circumstances" threshold. *Vo*, 49 F.4th at 1170 (citing *Arroyo*, 19 F.4th at 1213). Specifically, the California Legislature created the Unruh Act to give plaintiffs seeking an injunction under the ADA the additional option of pursuing monetary damages. *Arroyo*, 19 F.4th at 1211–12. The Unruh Act "relies dispositively on the ADA's substantive rules [and] expands the remedies available in a private action" to include monetary damages. *Id.* at 1211. The California legislature became concerned that "high-frequency litigants may be using the statute to obtain monetary relief for themselves without accompanying adjustments to locations to assure accessibility to others." *Id.* But rather than adjust the language of the statute, the California Legislature opted to impose filing restrictions on potential litigants, making it "very unattractive" for litigants seeking monetary relief to file joint ADA-Unruh Act claims in state court." *Id.* at 1211–12. However, as these restrictions do not apply in federal court, they have been rendered "largely toothless," causing a "wholesale shifting of Unruh Act/ADA cases into the U.S. District Court for the Central District of California." *Id.* As the Ninth Circuit concluded, because this evasion of the Legislature's limitations would both be unfair to defendants and constitute "an affront to the comity between federal and state courts," it rises to the level of "exceptional circumstances" under section 1367(c)(4). *Vo*, 49 F.4th at 1171. The plaintiff asserts that "there is nothing unique in the state court procedures that are not replicated in some fashion in the federal system," Response at 10,

but the Ninth Circuit considered both systems and determined otherwise. *See Vo*, 49 F.4th at 1170-1171.

Here, the circumstances in this case meet the "exceptional" threshold. As previously discussed, Harris and/or his counsel qualify as high-frequency litigants. Further, given the "unique configuration of laws in this area" that have given rise to concerns regarding fairness and the comity between federal and state courts, exercising supplemental jurisdiction over Harris's Unruh Act claim results in the same evasion of the California state legislature's filing restrictions. *Id.*

Moreover, as discussed above, Harris's four state law claims predominate over the single federal law claim. Thus, extending supplemental jurisdiction over the Unruh Act would run afoul of principles of federal-state comity.

    iv. <u>As this case is in its nascent stages, there are compelling reasons for declining supplemental jurisdiction.</u>

Given that the first prong is satisfied, this Court must proceed to the second prong and consider "what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* at 1171 (internal quotation marks omitted) (quoting *Arroyo*, 19 F.4th at 1210).

This case is still in its early stages—the initial complaint was filed on February 14, 2025, and the Defendants have not yet appeared. Accordingly, *Vo* does not dictate that the Court retain jurisdiction. *Compare id.* at 1172 (concluding that because "[t]he district court here declined supplemental jurisdiction over Vo's Unruh Act claim well before it ruled on the merits of the ADA claim," there is "no reason to hold that the district court abused its discretion in determining there were compelling reasons to decline jurisdiction over the Unruh Act claim"), *with Arroyo*, 19 F.4th at 1215–16 ("If the district court had declined supplemental jurisdiction over Arroyo's Unruh Act claim at the *outset* of the litigation, it might then still have been possible to further California's interest in cabining Unruh Act damages claims through the imposition of heightened *pleading* requirements and a substantial up-front filing fee.").

Accordingly, the Court DECLINES to exercise supplemental jurisdiction over Harris's state law claims. The Court therefore DISMISSES the Unruh Act claim, California Disabled Persons Act claim, the California Health and Safety Code, and the negligence claim WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: June 5, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge